## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: MEREDITH LUZELLE LEMANSKI | ) | **CHAPTER 7** |
| Debtor, | ) | |
| | ) | **CASE NO. 24-58636-sms** |

---------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **RIVER RIDGE AT CANTON, LP D/B/A** | ) | |
| **RIVER RIDGE AT CANTON** | ) | |
| | ) | |
| **Movant,** | ) | |
| **vs.** | ) | **CONTESTED MATTER** |
| | ) | |
| **MEREDITH LUZELLE LEMANSKI, Debtor** | ) | |
| | ) | |
| **S. GREGORY HAYS** | ) | |
| **CHAPTER 7 TRUSTEE,** | ) | |
| **Respondents,** | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **RIVER RIDGE AT CANTON, LP D/B/A RIVER RIDGE AT CANTON** has filed a ***Motion for Relief from Automatic Stay*** with the court seeking an order granting relief from the automatic stay in the above-styled case.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the ***Motion for Relief from Automatic Stay*** at **10:00 A. M. on November 13, 2024** in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-In and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. Meeting Details: Toll-Free number **833-568-8864;** Meeting ID **161 179 4270**. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including

addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: this 21st day of October, 2024.

/s/ *Andrew P. Bennett*
Andrew P. Bennett
Attorney for Movant
State Bar No. 135493
700 Churchill Court
Suite 200
Woodstock, GA  30188
470-567-9060
apbennett@apbennett.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: MEREDITH LUZELLE LEMANSKI | ) | **CHAPTER 7** |
| Debtor, | ) | |
| | ) | **CASE NO. 24-58636-sms** |
| ------------------------------------------------- | | ------------------------------------------------- |
| RIVER RIDGE AT CANTON, LP D/B/A | ) | |
| RIVER RIDGE AT CANTON | ) | |
| | ) | |
| Movant, | ) | |
| vs. | ) | **CONTESTED MATTER** |
| | ) | |
| MEREDITH LUZELLE LEMANSKI, Debtor | ) | |
| | ) | |
| S. GREGORY HAYS | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| Respondents, | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW   RIVER RIDGE AT CANTON, LP D/B/A RIVER RIDGE AT

CANTON (hereinafter collectively "River Ridge") by and through counsel, and hereby moves the

Court as follows:

1.

This Court has jurisdiction over this contested matter pursuant to 28 USC §1471 and 11

USC §362 and 363.

2.

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 19, 2024.

3.

Movant is the lessor of the premises where the Debtor resides at 8203 River Ridge

Drive, Canton, GA 30114.

4.

Debtor leased the premises from Movant under a written lease agreement for a term

commencing December 1, 2022 and ending November 30, 2023. The lease was not terminated, and thus, it was automatically renewed on a Month-to-Month basis. The monthly rent is $1,200.00 which is due on the 1st day of each month and late after the 5th day of the month at which time a $60.00 late fee is due as additional rent. See Exhibit 1.

5.

Debtor owes pre-petition rent for the month of July 2024 and August 2024 in the amount of $2,400.00 and a late fee for the month of July 2024 and August 2024 in the amount of $120.00. Attached hereto is a true and accurate copy of the account ledger. See Exhibit 2.

6.

Movant filed a dispossessory action (CAFN 24MCE3728) in the Magistrate Court of Cherokee County on or about July 17, 2024. But, the case is now stayed by the filing of this Bankruptcy Petition.

7.

Debtor has indicated that he would reject the lease. If the lease were rejected then the debtor would be in breach and the possessory interest would be expired. At best Debtor has a mere possessory interest in the property. Movant seeks relief to pursue possession of the premises in State Court. Additionally, Debtor has failed to pay post-petition rent for September and October 2024. The rent arrearages and this default gives Movant cause to assert that Debtor has failed to provide adequate assurance of future performance as required by the Bankruptcy Code. Debtors have a mere possessory interest in the property and pursuant to 11 USC §365 only the Chapter 7 Trustee has the right to assume or reject the lease agreement, but the lease has no value to the estate.

8.

By reason of the foregoing, continuation of the automatic stay of 11 USC 362(a) will work real and irreparable harm to Movant.

9.

Debtors are still in possession of the premises, and Movant is not adequately protected as required under 11 USC 1322(b)(7).  Therefore, Debtors are required pursuant to 11 USC Section 365(b)(4) to return possession to the lessor.

**WHEREFORE,** Petitioner prays for:

1. An Order terminating the automatic stay and authorize Movant to proceed with eviction proceedings in State Court;

2. A waiver of Bankruptcy Rule 4001(a)(3);

3. Reasonable attorney's fees; and/or;

4. Such other and further relief as is just and proper.

This 21st day of October, 2024.

/s/ *Andrew P. Bennett*

Andrew P. Bennett
Attorney for Movant
State Bar No. 135493

700 Churchill Court
Suite 200
Woodstock, GA  30188
470-567-9060
apbennett@apbennett.com

## CERTIFICATE OF SERVICE

**CASE NO. 24-58636-sms**                    **In Re: Meredith Luzelle Lemanski**

I hereby certify that on the 21st day of October, 2024, I electronically filed the foregoing "Motion for Relief from Stay" and "Notice of Hearing" using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

**Attorney for the Debtor(s):**

CLARK & WASHINGTON, LLC

I further certify that on this day I caused a copy of this document to be served via UNITED STATES FIRST CLASS MAIL, WITH ADEQUATE POSTAGE on the following parties at the address shown for each

**Debtor**
Meredith Lemanski
8203 River Ridge Drive
Canton, GA  30114

E. L. Clark
Clark & Washington, LLC
3300 Northeast Expwy., Bldg. 3
Atlanta, GA 30341

S. Gregory Hays, Chapter 7 Trustee
Hays Financial Consulting, LLC
2964 Peachtree Road, NW, Suite 555
Atlanta, GA 30326-1085

U.S. Trustee
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA  30303

Executed on: October 21, 2024        /s/ *Andrew P. Bennett*
                                        Andrew P. Bennett
                                        State Bar No. 135493

700 Churchill Court
Suite 200
Woodstock, GA  30188
470-567-9060
apbennett@apbennett.com



### LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is entered into this **1ˢᵗ** day of **December, 2022**, by and between **River Ridge at Canton, LP** d/b/a **River Ridge of Canton, LP**("Lessor"), by its agent S & E Holdings, LLC ("Agent") and **Meredith Lemanski** (jointly and severally, "Lessee").

WITNESSETH that Lessor, for consideration set forth herein, does hereby demise, let, and lease unto Lessee the premises known as **8203 River Ridge Dr., Apt. 203, Canton GA 30114** ("Premises") commencing **December 1, 2022**, (the "Occupancy Date") and ending on **November 30, 2023**, ("initial term") upon the following terms and conditions:

| | |
|---|---|
| **1. Rent** | The consideration owed by Lessee for each month during the initial term of this Lease shall be the sum of: |
| | Total Monthly Rent: $1,099.00. |

**2. Rent Payments**  Lessee shall pay the Rent in an initial installment of prorated rent of **$1,099.00**, which is immediately due and payable, and thereafter in **11** monthly installments of **$1,099.00**, due and payable in advance commencing on the **1st day of January, 2023**, and continuing on the 1st day of each month during the initial term of this Lease. The Lessee shall pay a final prorated rent from **November 1, 2023** to **November 30, 2023** of **$1,099.00**. All Payments of Rent shall be made by check or money order sent to Lessor at: **River Ridge at Canton, LP** (or such other address as Lessor may designate from time to time) and shall be due without demand.



**Initial here**

RENT PAYMENTS NOT RECEIVED BY THE **FIFTH (5TH)** DAY OF THE MONTH FOR WHICH SAID PAYMENT IS DUE SHALL BE SUBJECT TO A LATE PAYMENT CHARGE OF FIVE PERCENT (5%) OF THE MONTHLY RENT AND SUCH LATE CHARGE WILL BE IMMEDIATELY DUE AND PAYABLE AS ADDITIONAL RENT PURSUANT TO THE TERMS OF THIS LEASE. PROVIDED, HOWEVER, IN THE EVENT LESSEE FAILS TO PAY THE RENT WITHIN **FIVE (5)** DAYS AFTER THE DUE DATE, SUCH FAILURE SHALL BE CONSIDERED A WILLFUL NON-COMPLIANCE AND THE LESSOR OR ITS AGENTS MAY PROCEED WITH LEGAL ACTION PURSUANT TO STATE LAW. THE LESSEE SHALL BE RESPONSIBLE FOR ALL COSTS, INCLUDING ATTORNEY'S FEES, EXPENDED BY LESSOR OR HIS AGENT, IN ENFORCING THE COLLECTION OF ANY DELINQUENT RENT AND/OR LATE CHARGES AS PERMITTED BY STATE LAW.
PAYMENT BY PERSONAL CHECK IS A PRIVILEGE ACCORDED BY THE LESSOR AT ITS SOLE DISCRETION AND THE LESSOR SPECIFICALLY RESERVES THE RIGHT TO DEMAND PAYMENT BY CERTIFIED CHECK OR MONEY ORDER FOR ANY AND ALLS SUMS, INCLUDING ADDITIONAL RENT, DUE UNDER THIS LEASE. FURTHER, LESSEE AGREES THAT ANY SUMS RECEIVED BY LESSOR FROM LESSEE MAY BE APPLIED, AT ITS SOLE DISCRETION, IN PART OR IN WHOLE, TO ANY OUTSTANDING OBLIGATION UNDER THIS LEASE, DESPITE CONTRARY OR CONFLICTING DIRECTIONS, VERBAL OR WRITTEN, APPEARING WITH OR ON THE REMITTANCE OFFERED BY THE LESSEE.

S & E Holdings, LLC Lease Agreement

EXHIBIT 1

IN ADDITION, IF LESSEE PAYS RENT BY CHECK AND HIS CHECK IS RETURNED BY HIS BANK FOR ANY REASON, THERE WILL BE A RETURNED CHECK CHARGE OF $35.00, AND SUCH RETURNED CHECK CHARGE WILL BE IMMEDIATELY DUE AND PAYABLE AS ADDITIONAL RENT PURSUANT TO THE TERMS OF THIS LEASE. Moreover, if Lessee's check is returned after the **fifth (5th)** day of the month, or if Lessee's check is returned prior to the **fifth (5th)** day of the month but is not made good by Lessee prior to the **fifth (5th)** day of the month in the form of a money order, certified check or cashier's check, then such payment shall be considered late and, in addition to the returned check charge, Lessee shall be liable for a late charge as set forth above. **PERSONAL CHECKS WILL NOT BE ACCEPTED AFTER THE FIFTH (5TH) DAY OF THE MONTH.**
THE LESSEE AGREES TO PAY ADDITIONAL RENT, IN ADDITION TO THE RENT, FOR ITEMS SPECIFIED IN THIS LEASE. THESE ITEMS INCLUDE, BUT ARE NOT LIMITED TO, LATE CHARGES, BAD CHECK CHARGES, DAMAGES TO THE PREMISES, LOCK OUTS AND EXPENSES INCURRED BY THE LESSOR FOR ATTORNEY'S FEES OR FOR FILING FEES NECESSARY TO ENFORCE THE LEASE. ALL ADDITIONAL RENT IS THE LESSEE'S RESPONSIBILITY.
IF THE UNIT IS RENTED BY MORE THAN ONE PERSON, THE LESSEES AGREE THAT THE LESSOR MAY PAY ANY REFUND TO ANY LESSEE IDENTIFIED IN PARAGRAPH 1 OF THIS AGREEMENT, WITHOUT OBLIGATION TO ANY OTHER NAMED LESSEE.

| | |
|---|---|
| **3. Security Deposit**<br><br><br><br>———————<br>**Initial here** | To secure the performance by Lessee of all the terms of this Lease, Lessee has herewith deposited with Lessor or Agent the sum of $999.00, (the "Deposit"). The Deposit shall remain with the Lessor or Agent for the full and faithful performance by Lessee for each and every item of this Lease. Lessee shall be entitled to the return of the Deposit only after full compliance by the Lessee with the terms of this Lease, and after Lessor has had the opportunity to inspect the Premises following the expiration or earlier termination of this Lease and Lessor has determined that the Premises are in the condition required by Section 4. After the expiration or earlier termination of said tenancy and delivery of possession to Lessor by Lessee, Lessor shall have no obligation to apply the Deposit to any unpaid amounts due Lessor from Lessee, but Lessor may do so at its option and Lessor's rights upon default by Lessee shall in no way be affected by the fact that Lessor may be holding the Deposit. If Lessee has defaulted under the terms of this Lease, at Lessor's option all or part of the Deposit may also be applied against the money due Lessor as well as against damages to the Premises, and any balance refunded to Lessee. Upon the sale or conveyance of the Premises, Lessor may transfer or assign Lessee's Deposit to the new owner, and upon such transfer, all of the Lessor's liability and that of Agent for such Deposit shall terminate. |

**4. Condition of Premises**

Lessee acknowledges receipt from the Lessor of carpeting and hard flooring throughout the leased Premises, window coverings, a refrigerator, a cooking range, a dishwasher, a garbage disposal, washer and dryer, and of all items described in the inventory attached hereto as part hereof, and further acknowledges that all said property is in good state of repair and clean condition except as noted on said Move-In Inspection form.  By the execution of this Lease, the Lessee acknowledges that the Premises are in safe, habitable and good condition and that the Lessee hereby accepts the Premises in its present condition at the date of execution of this Lease.



_____

**Initial here**

Upon termination of this Lease, Lessee shall return the Premises, equipment, and fixtures in as good condition as when Lessee took possession, ordinary wear and tear accepted.  If Lessee should fail to do so, Lessor may restore the Premises, equipment and fixtures and Lessee shall be responsible for paying the costs thereof promptly upon demand.

Lessee shall keep the said Premises in a clean, sanitary, and healthy condition, all at Lessee's own expense. Lessee shall not make any alterations or additions to the Premises without written consent of Lessor.

| | |
|---|---|
| **5. Occupancy** | The Premises shall be used only as a personal residence by the Lessee and shall be occupied only by the following:<br>**Meredith Lemanski**<br>Persons visiting Lessee may not reside at the Premises for more than fifteen (15) days in aggregate during any calendar year, unless written permission is first secured from Lessor. The Premises will not be used or allowed to be used for any unlawful purposes, nor for any purposes deemed hazardous by the Lessor or Lessor's insurance company because of fire or other risk; and that Lessee will conform with and obey all laws, ordinances, rules, regulations, requirements and orders of all governmental agencies or subdivisions having jurisdiction over said Premises and the use and occupancy thereof. Only those persons indicated above may live in the demised Premises. Lessee must obtain Lessor's prior written consent if there is to be any change in the above-named occupants of the Premises. Lessee and all occupants and guests will comply with all written Community Policies and Procedures (as hereinafter defined). Lessee shall not operate or permit to be operated a radio, stereo, musical instrument or television in any manner, which might disturb other residents. LESSEE SHALL NOT HARBOR ANY DOG, CAT OR OTHER ANIMAL IN THE PREMISES, IN THE BUILDING OR OTHERWISE WITHIN THE CONFINES OF THE COMMUNITY WITHOUT THE PRIOR WRITTEN CONSENT OF THE LESSOR. **VISITING PETS ARE NOT PERMITTED. Aggressive Breeds Are Strictly Prohibited.** |

| | |
|---|---|
| **6. Sublet or Assign** | Neither this Lease or any part of the term thereof, nor the leased Premises, nor any portion thereof, shall be assigned, subleased, transferred or set over by the act of the Lessee, process or operation of law, or in any other manner whatsoever, without the written consent of the Lessor to each subletting, assignment, or transfer. |

| | |
|---|---|
| **7. Liability**<br><br>_Initial here_ | **Lessor shall not be liable for any damage to or injury of the Lessee, his family, invitees, employees or other person on the premises or for any damage to goods, or personal property of any kind thereon, arising from any cause other than Lessor's negligent acts or omissions to act, and Lessee hereby indemnifies and saves Lessor harmless from all claims arising from causes other than Lessor's negligent acts or omissions to act.** Lessor will not be liable to Lessee or Lessee's guests or occupants for any damages or losses to person or property caused by other persons, including theft, burglary, assault, vandalism, or other crimes. Lessor will not be liable to Lessee or Lessee's guests or occupants for personal injury or for damage to or loss of their personal property (furniture, jewelry, clothing, etc.) from fire, flood, water leak, rain, hail, ice, snow, smoke, lightning, wind, explosion, or interruption of utilities other than those due to Lessor's negligent acts or omissions. Lessor strongly recommends that Lessee secure his/her own insurance to protect against all other above occurrences. Lessee agrees that existing locks and latches are safe and acceptable, subject to lessor's duty to make needed repairs of same upon written request by lessee. Lessor does not maintain any insurance on lessee's personal property. Insurance on personal property is the responsibility of lessee alone. Lessee acknowledges that Lessor has informed lessee of the importance of obtaining Renter's insurance. If Lessee elects to purchase the personal liability insurance from a company, Lessee will provide the Lessor with written proof of compliance with this insurance clause on or prior to the Commencement Date of the Lease, and from time to time thereafter upon Lessor's request. Lessee acknowledges and agrees that their failure to purchase insurance in accordance with this paragraph is a material breech of the lease agreement, which could result in termination of the lease agreement. Initial Here. LESSEE AGREES THAT EXISTING LOCKS AND LATCHES ARE SAFE AND ACCEPTABLE, SUBJECT TO LESSOR'S DUTY TO MAKE NEEDED REPAIRS OF SAME UPON WRITTEN REQUEST BY LESSEE. LESSOR DOES NOT MAINTAIN ANY INSURANCE ON LESSEE'S PERSONAL PROPERTY. INSURANCE ON PERSONAL PROPERTY IS THE RESPONSIBILITY OF LESSEE ALONE. |

**8. Utilities**

**Initial here**

Lessee shall pay all charges and fees associated with the utility costs furnished to them on the Premises during the term of this Lease. Lessee shall not abuse the use of any utilities provided by Lessor. Any expense produced by such an abuse shall be borne solely by Lessee as additional rent. If applicable, Lessor shall pay for trash removal service to the leased Premises. If during the lease term, Lessee fails to pay for all charges for the aforementioned services, which charges shall be deemed to be additional rent, Lessor will apply a portion of the next months rent to any outstanding balance. If at the time of move-out an outstanding balance exists, the amount will be deducted from the security deposit.

**9. Failure to Deliver Possession**

It is agreed that if Lessee shall be unable to occupy the Premises on the Occupancy Date, by reason of the said premises not being ready for occupancy or by reason of the holding over of any previous occupant of said Premises, or as a result of any cause beyond the control of Lessor, Lessor shall not be liable in damages to Lessee therefore but during the period Lessee shall be unable to occupy said Premises as hereinbefore provided, the rent therefore shall be abated and Lessee may terminate this lease upon at least five (5) days' written notice to the Lessor. The Lessor shall be the sole judge as to when the Premises are ready for occupancy, and the Occupancy Date shall be extended until the date the Lessor has determined that the Premises are ready for occupancy.

Lessee hereby understands and agrees that at the time of move-in or during construction of the community, all facilities, equipment and service may not be available for use. Lessor reserves the right to modify representations made to Lessee throughout the construction or a repair period regarding facilities, equipment and service.

**10. Breach of Lease**

If Lessee shall fail to pay any monthly rent as it becomes due or shall fail to perform any or observe any other term or condition of this Lease or should Lessee be declared incompetent, become bankrupt or make a voluntary assignment for the benefit of creditors or should a receiver, guardian or trustee be appointed of Lessee's property, then and in any such event, Lessor, at Lessor's option, may re-enter or repossess the Premises upon the order of any court of competent jurisdiction without being liable for forcible entry, trespass or other tort, and, as Lessor elects, Lessor may elect any or all of the following: (a) declare this Lease to be terminated, in which event Lessee's rights and Lessor's duties under this Lease shall terminate without prejudice to Lessor's rights to receive, if local law allows, unpaid rent and damages for breach of this Lease; or (b) relet the Premises on behalf of the Lessee for the highest rent which may be reasonably attained, which event shall not be considered as a surrender or acceptance of the Premises or a termination of this Lease, and recover from Lessee any deficiency between the amount received as rent upon the reletting less all costs of reletting which Lessor deems necessary or appropriate to be made in connection with the reletting and the amounts due under this Lease.

**11. Non-Waiver**

Failure on the part of Lessor to re-enter or repossess the Premises or to exercise any of its rights hereunder upon any default or breach shall not preclude Lessor from the exercise of any such rights upon any subsequent defaults. The acceptance of past due rent shall in no event act as a waiver of Lessor's right to terminate this Lease for nonpayment of rent due, unless local law provides otherwise, and no notice or demand shall be required for enforcement thereof.

The waiver by Lessor of any default hereunder committed by Lessee shall not constitute nor be held or construed as a waiver of any subsequent or other default.

| | |
|---|---|
| **12. Abandon-ment** | Should it reasonably appear to Lessor that Lessee has abandoned the Premises (it being agreed that Lessee's absence from the Premises for seven (7) consecutive days after rent has become due and remains unpaid or Lessee's removal of substantially all of his possessions will create a conclusive presumption of abandonment), the Premises or any part thereof may be repossessed by Lessor and relet upon terms satisfactory to Lessor, and Lessee shall be liable for any deficiency resulting therefrom. Lessee's liability for deficiency includes but is not limited to: painting, cleaning and repair costs, loss of rent for days of apartment vacancy and costs of obtaining a new resident. Lessor may apply Lessee's Deposit to rectify any damage caused by Lessee's vacating or abandonment. Application of the Deposit shall not waive or limit Lessor's right to further hold Lessee liable for costs and damages, losses or injury therein due. |

| | |
|---|---|
| **13. Holding Over**<br><br>*[initials]*<br><br>_____<br>**Initial here** | Without the prior written permission of Lessor, if Lessee retains possession of the Premises or any part thereof after termination of this Lease by lapse of time or otherwise after written notice from Lessor of Lessor's refusal to extend or renew said Lease, or after the effective date of any notice of termination of this Lease by Lessee, Lessee agrees to pay to Lessor for actual damages due to an incoming Lessee's inability to enter because of Lessee's unlawful occupancy. If Lessee shall occupy said Premises after the expiration of this Lease, Lessor's acceptance of any payment by Lessee shall not operate as a waiver of any notice to quit, notice of intent to vacate or any judgment for possession. **If Lessee occupies said Premises after the expiration of this Lease, Lessee shall be required to pay rent in the amount of the current market rent plus $100.00.** |

| | |
|---|---|
| **14. Notices** | All notices and demands authorized and required hereunder may be served upon Lessee in person or by U.S. Mail addressed to Lessee at the Premises. All notices or demands authorized or required to be given to Lessor may be served upon Lessor in person to Lessor or by U.S. Mail, addressed as provided in paragraph 2. |

| | |
|---|---|
| **15. Termination Or Automatic Renewal**<br><br>*[initials]*<br><br>_____<br>**Initial here** | During the initial term of this Lease, Lessor may terminate this Lease after a failure to pay Rent or other breach by Lessee, as provided in paragraph 10. If Lessee terminates this Lease before the end of the term, Lessee shall be liable to Lessor for all actual damages resulting from the early termination.<br><br>AT THE END OF THE INITIAL TERM OF THIS LEASE, THIS LEASE SHALL AUTOMATICALLY RENEW AND CONTINUE ON A MONTH-TO-MONTH BASIS, UPON ALL OF THE SAME TERMS AND CONDITIONS EXCEPT THAT THE MONTHLY RENT SHALL BE INCREASED TO THE CURRENT MARKET RATE-<br>RENT PLUS $50.00, UNLESS EITHER LESSOR OR LESSEE SHALL GIVE WRITTEN NOTICE AT LEAST 60 DAYS PRIOR TO THE END OF THE INITIAL TERM STATING THAT SUCH PARTY DOES NOT WISH TO CONTINUE THE LEASE. LESSEE HAS INITIALLED THIS AUTOMATIC RENEWAL PROVISION TO INDICATE THAT LESSEE HAS READ AND UNDERSTANDS THE PROVISION.<br><br>**IF THIS LEASE HAS BEEN AUTOMATICALLY RENEWED ON A MONTH-TO-MONTH BASIS AFTER THE END OF THE INITIAL TERM, EITHER PARTY MAY TERMINATE THIS LEASE BY GIVING 30 DAYS WRITTEN NOTICE TO THE OTHER PARTY.** |

| 16. Military Transfer Clause | If the Lessee is a member of the Armed Forces of the United States and receives official orders to depart from the area to another duty station more than fifty miles from the site of the community, this Lease may be terminated under the following conditions: (A) The Lessee must provide to the Lessor a full 30-day written notice to vacate because of his/her military orders; (B) The written notice must be accompanied by one (1) copy of the official orders which states reporting date and reporting location; (C) At such time as the above-described notice and orders are delivered to the Lessor, all rent payments through the Lessee's intended lease termination date must be made in full. The notice will not be valid unless accompanied by such payment. In addition, Lessee is responsible for any physical damage to the Premises, ordinary wear and tear excepted, and any other fees due under the terms of this Lease. |
|---|---|

| 17. Maintenance | The Lessor will be responsible for maintenance and repairs that are required due to normal wear and tear or standard deterioration of plumbing, electrical wiring, and all other such facilities in the leased Premises.

Lessee shall immediately report to the Lessor all maintenance problems needing repair (i.e., all problems with plumbing, electrical wiring, and all other such facilities). If by the Lessee's negligence, or by the Lessee's failure to immediately report to the Lessor a problem with the plumbing, electrical wiring, or any other facility on the leased Premises, the Premises are damaged in any manner or to any extent, the Lessee shall be liable for all such damages. Lessor will make such repairs or replacements when Lessee has breached the above stated duty, and any sums so expended by the Lessor shall be deemed owing by the Lessee to the Lessor as additional rent and payable immediately.

Lessee is liable for all damages and the expense of repair or replacement to the leased Premises and to any other part of Lessor's property (whether common areas or premises leased to other parties) where such damage is the result of intentional or negligent acts or omissions, or otherwise, of the Lessee, his family, guests or agents, including but not limited to "accidents" which occur in the leased Premises and damage it and "accidents" which originate in the Leased Premises and which result in damage not only to the leased Premises but to other portions of Lessor's property, unless such damage has been caused by normal wear and tear or standard deterioration of said facility or has been caused by Lessor or its employees. Lessor will make such repairs or replacements and any sums so expended by the Lessor shall be deemed owing by the Lessee to the Lessor as additional rent and payable immediately. |
|---|---|

**18. Miscellaneous Provisions**

(a) Lessee shall not use or permit said Premises or other parts of Lessor's property to be used for any illegal or immoral purpose nor shall Lessee do, or permit any act or thing which may be a nuisance, annoyance, inconvenience or damage to Lessor, Lessor's tenants, the occupants or adjoining property of the neighborhood. Lessee shall refrain from any type of objectionable conduct.

(b) The Lessee shall not paint or permit the painting of any portion of the leased Premises, or erect or cause to be erected any structure in, or upon the leased Premises, without the prior written consent of the Lessor. No additional locks shall be placed anywhere in the leased Premises without the prior written consent of the Lessor.

(c) The Lessee shall not remove the window covering provided by Lessor with the leased Premises without the prior written consent of Lessor.

(d) The Lessee shall not suffer or permit anything to be kept on the window sills or balcony rails in the leased Premises, shall not permit anything to be thrown out of the windows of the leased Premises, and shall not permit anything to be placed in or hung from the outside of said windows. The Lessee shall not in any manner deface or injure the floors, walls, woodwork, or windows of the leased Premises or Lessor's property, or place any sign, advertisement, or notice of any kind in or upon the leased Premises or any part of Lessor's property.

(e) The Lessee shall not deposit, park or suffer or permit the depositing or parking of any personal property, in or upon either the walks or lawns appurtenant to the leased Premises. The Lessor shall have the right to impound any such articles deposited or parked in or upon such spaces.

(f) The Lessee shall not park any damaged or unsightly vehicle, vehicle with expired tags, or vehicle in inoperable condition, in the parking lots of the leased Premises and the Lessor's property. Lessor reserves the right, and Lessee consents thereto, to the towing away at Lessee's expense of any such vehicle that Lessor or agent shall determine to be so damaged or unsightly. Lessor reserves the right to tow the vehicle at owner's expense, after five days' tagging or such tagging as provided for in local law. No trailers, campers or boats are permitted on the Lessor's property without the consent of Lessor.

(g) Waterbeds or other liquid-filled furniture are permitted only if Lessee first obtains a current Renter's Insurance Policy and provides a copy of such Policy to the Rental Office prior to installation of such furniture. The Policy must cover the community for any damage, including ruptures or leaks of the waterbed or liquid-filled furniture.

(h) It is understood and agreed that should Lessor provide storage lockers outside the Premises to accommodate Lessee and other residents in the storage of suitcases, trunks, boxes and other personal property, the use of such storage lockers by Lessee shall be subject to such policies and procedures as Lessor may prescribe, with the express understanding that Lessor shall not be responsible in any manner whatsoever for any damages to Lessee or Lessee's property in connection with Lessee's use of such storage locker(s).

(i) The Lessee will give notice to the Lessor of any anticipated extended absence from the leased premises in excess of seven (7) days. If the Lessee fails to give such notice, the Lessor will hold the Lessee liable for damages occasioned by such absence.

(j) Lessee warrants that all information given in the application for lease is true and correct. Lessee must provide new information if there is any substantial change. Lessor is relying on the truthfulness and completeness of statements on said application prior to entering into this Lease. Should any statements on the application to be found to be untrue, then, at the option of the Lessor, this Lease shall be void, forfeited or terminated and Lessee shall be liable to Lessor for all changes caused by Lessee's action or omission. In addition, if Lessee or any occupant is convicted of any crime or is listed on any registry, which would have been grounds for denying the initial application, during the lease term, the Lessor may , at its sole discretion, terminate this Lease.

(k) This Lease and the attached Addenda and the Community Policies and Procedures contain the entire contract between the parties and no promise, warranty or agreement has been made by either party that is not set forth herein. No subsequent amendment to this Lease shall be binding unless in writing and signed by the parties hereto.

(l) The Addenda attached hereto and signed or initialed by Lessee and Lessor are a part of this Lease and are hereby incorporated by reference herein:

(m) Lessee acknowledges that the Community Policies and Procedures have been given to him/her and that they, as amended from time to time by Lessor, are hereby incorporated by reference and are additional terms of this Lease.

| **19. Satellite Dishes** | The Federal Communications Commission has issued an order under the Telecommunications Act of 1996, which allows the Lessee to install a satellite dish and/or antenna in the leased premises. Lessee shall comply with the following restrictions: |
|---|---|

Lessee shall not install the satellite dish and/or antenna on the rooftop, windowsill, outside wall, common-use balconies or stairwells or any common areas. No part of the satellite dish and/or antenna can extend beyond the balcony railing line. NO PART OF THE INSTALLATION MAY PENETRATE THE PROPERTY IN ANY WAY! Lessee shall not drill holes in outside walls, roofs, windows or in balcony railings. Lessee shall not operate the antenna and/or dish in any manner that causes damage to the building or the Owner's property except for ordinary wear and tear.

Lessee shall not install a satellite dish and/or antenna any larger than one meter in diameter.

The dish and/or antenna may not be placed in any location that will create a safety hazard, nor will it be installed or operated in a way that creates a safety hazard. The dish and/or antenna must be installed in accordance with all building and housing codes and the manufacturer's instructions.

Lessee shall be required to obtain and provide proof of renters insurance that covers any damage and/or injuries caused by the installation and/or operation of the satellite dish and/or antenna prior to installation. The insurance shall list the owner/manager as an additional insured. **INITIAL HERE!**



Lessee by executing this Addendum holds the owner/manager harmless and agrees to indemnify the owner/manager for any damage to property or injuries to persons as a result of the installation and/or operation of the satellite dish and/or antenna. The Lessee's security deposit may be retained by the Lessor for damage caused by the Lessee's installation and/or operation of the antenna and/or dish.

**Initial here**

In the event that the Federal Communications Commission's order is overturned and/or modified, Lessor reserves the right to alter the conditions set forth above and may revoke the right of the Lessee to install

| **20. Smoke Detector Notice** | This residential dwelling unit contains alternating current (AC) electrical service. In the event of a power outage, an alternating current (AC) powered smoke detector will not provide an alarm. Therefore, the occupant should obtain a dual-powered smoke detector or a battery powered smoke detector. Your apartment home may already have a dual-powered smoke detector. Please contact the management office for clarification. LEASING OFFICE NUMBER: (678) 493-8280 |
|---|---|



**Initial here**

**21. Permission to Obtain a Credit Report for Collection Purposes**

To the fullest extent permitted by applicable law, in the event of my default under this Lease, by my signature below, I expressly authorize you or your agent (including, without limitation, a third party collection agency) to obtain a consumer report under the Fair Credit Reporting Act which you may use in attempting to collect any of my defaulted payments or charges or for any other permissible purpose. Lessee hereby acknowledges that a copy of the Privacy Policy has been provided to them.

_____

Initial here

---

**22. Mold Awareness**

_____

Initial here

Mold is found virtually everywhere in our environment - both indoors and outdoors and in both new and old structures. All of us have lived with mold spores all our lives.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. There is conflicting scientific evidence as to what constitutes sufficient accumulation of mold which could lead to adverse health effects. Nonetheless, appropriate precautions need to be taken.

Preventing mold begins with you. The Lessee is hereby notified that the Premises are subject to the infestation of mold or mildew if not properly maintained. When moldy materials are disturbed, some molds produce toxic chemicals which may contaminate the Premises' air space. Lessee acknowledges that routine visual inspections for mold growth or signs of water damage and wetness is the most reliable method for identifying the presence of mold or mildew and should be addressed immediately.

Lessee agrees to maintain the Premises in a manner that prevents the occurrence of an infestation of mold or mildew in the Premises. Lessee agrees to comply with the following:

Lessee shall immediately report any water intrusion, such as plumbing leaks, drips or "sweating" pipes.
Lessee shall limit the sources of indoor humidity by increasing fresh air ventilation and warming cold surfaces where condensation occurs.
Lessee shall use bathroom fans and open interior windows while showering or bathing and exhaust fans when cooking. Lessee will immediately report to Lessor any non-working fan or window.
Lessee shall use all reasonable care to close all windows to prevent rain or outdoor water from penetrating.
Lessee shall clean and dry any damp or wet building materials and/or personal property within 24 to 48 hours.
Lessee shall conduct a visual inspection for the presence of mold growth inside the Premises at least once per month, including window frames and on carpets; ceiling tiles, and on any currently or formerly damp material made of cellulose (such as wallpaper, books, papers, and newspapers); all indoor plants; and personal property.
Lessee shall immediately report to Lessor if significant mold growth is noted. Most mold can be cleaned by using water and detergent or bleach, and drying the surface completely afterwards.
Lessee agrees not to bring any personal property into the unit that may contain mold, especially "soft possessions" such as sofas, mattresses, and pillows.
Lessee agrees to indemnify and hold harmless Lessor against any claims, losses, damages and expenses of whatsoever kind, including, but not limited to, attorneys' fees, that any or all of the Lessor or Lessor's management company or other agents may at any time sustain or incur by reason of any claims asserted against them to the extent that such claims arise out of any potentially health affecting substances brought, or allowed to be brought, into the Premises, or caused to infest the Premises as a result of the negligence of Lessee, or any guest or visitor of the Lessee. _____ INITIAL HERE.

**23.
Surrender
of
Premises**

Upon termination of the lease period or after notification by Lessor or early termination of the Lease, Lessee shall surrender immediate possession of the leased Premises to Lessor and if this is not immediately done, Lessee shall pay Lessor all the damage which the Lessor may suffer by reason thereof, and will indemnify Lessor against all claims made by any succeeding tenant occasioned by Lessee's failure to surrender the Premises in accordance herewith.

**24.
Terrorism
and Sex
Offenses**

Lessee warrants and represents to Lessor that Lessee is not, and shall not become, a person or entity with whom Lessor is restricted from doing business with under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities.

Lessee also warrants and represents to Lessor that Lessee is not, and shall not become a person who is required to register or has registered as a convicted sex offender on any federal or state registry.

**25. Fireplace
Provision**

Some units have fireplaces for use by the Lessee. Lessee agrees to pay additional rent of $0.00 per month for the availability and use of the fireplace in his or her unit. The use of the fireplace is subject to the following cautions and conditions:

1. No fireplace should be operated without an adult in the room and awake during the entire time it is in operation.

2. The screen mesh must always be closed during fireplace operation. For vent-free gas fireplaces, the glass doors must remain open at all times during operation for proper combustion.

3. Vent-free fireplaces shall not be operated for more than 4 hours per day because operation for a longer period may cause the indoor air to have unacceptable levels of pollutants from the combustion. The logs in the gas fireplace should not be reconfigured as that may interfere with proper combustion.

4. Vent-free gas fireplaces are advertised by manufacturers to be operable and safe with no venting to the outdoors and no outside air. However, small amounts of carbon dioxide and water vapors are released during combustion and trace amounts of carbon monoxide (an odorless, poisonous gas) or other pollutants may also be released. Lessees or guests who are pregnant, anemic or suffer from heart or respiratory problems should not be in the apartment unit during operation of the fireplace to avoid the risk from these pollutants. It is highly recommended that Lessee opens a window in the same room about one-to-two inches to allow circulation of outside air and reduce the effects of any combustion gases. Doors to other rooms should also remain open to allow air circulation.

5. Lessee acknowledges that there is no electronic monitor for any of the possible combustion gases, including carbon monoxide, from the fireplace or other appliances in the unit. Lessee should seriously consider installing such an electronic monitor. Some fireplaces have a safety device called an ODS (oxygen depletion sensor), which will shut off the fireplace if the oxygen in the air drops below a certain level. However, the device will not monitor for other gases and will only monitor the oxygen level next to the fireplace logs, not in the rest of the room.

6. Lessee shall operate the fireplace in accordance with this Addendum and any manufacturer's instructions at all times. Lessee shall not operate the fireplace if the fireplace fails to light properly, the flame goes out during operation, or the Lessee sees or smells any change in combustion or the release of smoke or gases. Lessee shall immediately notify maintenance and wait until the fireplace is inspected and repaired before operating it again.

7. LESSEE S. _L NOT STORE WOOD IN A MANNER THAT B. _KS EGRESS OR BECOMES A PEST CONTROL ISSUE OR A HAZARD IN ANY WAY AS DETERMINED AT THE SOLE DISCRETION OF THE MANAGER.

Lessee hereby acknowledges and agrees that he or she has read and understands the conditions described in this provision and agrees to comply with the terms set forth herein. Lessee(s) agree to indemnify, defend and hold harmless the Lessor and its management company and other agents from any claims for injury or damages which result from the Lessee's failure to comply or Lessee's improper operation of the fireplace.

| 26. Access to Premises | Lessor reserves the following rights ("Reserved Rights"): (1) to enter the Premises or any part thereof at all reasonable hours and from time to time to make inspections, repairs, alterations or additions, to exhibit the Premises to prospective residents, purchasers or display without molestation by Lessee "For Rent" and other similar signs, and for any other purpose whatsoever related to the safety, protection, preservation or improvement of the Premises, the building or the community as permitted by law; (2) to enter the Premises at any time or times during the last sixty (60) days of the term of this Lease, to decorate, remodel, alter or otherwise prepare the Premises for re-occupancy, if during that period the Lessee shall have vacated the premises; and (3) to retain and use passkeys to the Premises.

The exercise of Reserved Rights by Lessor shall never render Lessor liable in any manner to Lessee or to any person in the Premises. |
|---|---|

| 27. Reasonable Accommodations and Modifications to Apartments



———————

Initial here | S & E HOLDINGS, LLC provide rental housing on an equal opportunity basis. Consistent with this policy, we welcome persons with disabilities to our community and will not discriminate against any person because of his or her disability, or his or her association with anyone with a disability. In addition, we know that sometimes it may be helpful to persons with disabilities to be able to make modifications to their unit or to have accommodations made in our practices or procedures to enable them to fully enjoy and use their residences. We explain below our policies on these issues.

Reasonable modifications to apartments. Residents with disabilities have the right to make, at their expense, reasonable modifications to their apartments if such modifications may be necessary to allow them to have an equal opportunity to enjoy and use their premises. If residents make a modification to their unit and later move out of the unit, we may require such residents to, at their expense, restore the interior of their residence to the condition that existed before the modification (subject to ordinary wear and tear). Please note that, upon request, River Ridge at Canton, LP will make the following reasonable modifications to your apartments free of charge in order to help make it enjoyable and accessible for you:

Installation of grab bars and other bars and rails,
Accessible washer/dryer replacement;
Accessible stove replacement with front-mounted controls
Provision of knee space under sinks in kitchens and bathrooms
Modification of handles on doors, faucets and cabinets,
Flooring remediation for wheelchair use,
Slip-proof flooring applications in bathrooms for floors, tubs and showers
Provision and installation of small supplies, e.g., tub benches, appliance remote controls, raised toilet seats
Modifications for hearing impaired persons including TDY phones for the apartment and management office, flashing smoke detectors and door bells.
Installation of extra outlets for assistive technology use
Peephole lowering |
|---|---|

Persons with a disability (or someone acting on their behalf) who wish to make a reasonable modification to their apartment must obtain permission to do so by submitting a request to the Management Office using the "Request for Reasonable Modification to Rental Unit Form". If you would like assistance in filling out this form please let us know and we will be glad to provide assistance. We will need to know what specific modification is being sought. In addition, if the disability is not obvious, we may ask for information that is necessary to evaluate the disability-related need for the modification; however, we will only request information necessary for us to evaluate your request, and all information will be kept confidential.

Depending on the modification requested, we may require you to provide reasonable assurances that the modification will be done in a workmanlike manner and that any required building permits will be obtained. During and upon completion of the modification, we may inspect the work in connection with our overall property management responsibilities. We may also offer to make the modification for you at a mutually agreed upon cost to you. We will not increase your security deposit as a result of a modification request. However, if you fail to restore the apartment to its original condition (excluding normal wear and tear) at the end of the tenancy, we may deduct the cost of the restoration from the security deposit.

Reasonable Accommodations. We will make reasonable accommodations in our rules, policies, practices, and/or services, to the extent that such accommodations may be necessary to give persons with a disability an equal opportunity to use and enjoy their apartment and the public and common use areas at the housing complex. For example, we will provide free trash and recycling pick-up if our trash area is inaccessible to you. In addition, we will provide free valet package delivery if you are unable to pick-up your packages. There are many other steps we can take to help accommodate your disability related needs.

Persons with a disability (or someone acting on their behalf) who would like a reasonable accommodation should submit a request to the Management Office using the "Request for Reasonable Accommodation" form. If you would like assistance filling out this form please let us know and we will be glad to provide assistance. We will need to know what accommodation is being sought. In addition, if the disability is not obvious, we may ask for information that is necessary to evaluate the disability-related need for the accommodation. We will only request information that is necessary for us to evaluate your request, and we will keep confidential all information you provide to us

We will respond to all requests for a reasonable accommodation and/or modification promptly. If we deny your request for a reasonable modification and/or accommodation we will explain in writing the reason for our denial and we will discuss with you whether there are other accommodations and/or modifications that we could provide that would meet your needs.

If you have any questions about this policy please contact the Property Manager. Alternatively, you may write the COMPANY'S EXECUTIVE Officers at the following address:

S & E Holdings, LLC
6851 Oak Hall Lane-Suite 100
Columbia, MD 21045

S & E Holdings, LLC and the Owner is committed to comply with all federal, state and local housing and equal housing opportunities laws. Breach of these provisions constitutes a material breach of your Lease Agreement.

WITNESS the signature of the parties hereto this _____ day of _____ , _____

LESSOR/AGENT:

S & E Holdings, LLC
as Agent for LESSOR

By: _____
    Authorized Agent

LESSEE(S)

_____
Meredith Lemanski

_____

# Resident Ledger



**S&E HOLDINGS** LLC



EXHIBIT 2

**Date: 10/02/2024**

| Code | t0075878 | Property | rr | Lease From | 12/01/2023 |
|---|---|---|---|---|---|
| Name | Meredith Lemanski | Unit | 08-203 | Lease To | 11/30/2024 |
| Address | 8203 River Ridge Dr. | Status | Eviction | Move In | 12/23/2020 |
| | Apt. 203 | Rent | 1200.00 | Move Out | 10/05/2024 |
| City | Canton, GA 30114 | Phone (H) | | Phone (W) | (404) 900-8861 |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 12/07/2020 | appl | Application Fee | 25.00 | | 25.00 | 2483348 |
| 12/14/2020 | | chk# 40191881859563 :CHECKscan Payment | | 25.00 | 0.00 | 2475079 |
| 12/23/2020 | secdep | Security Deposit | 999.00 | | 999.00 | 2484009 |
| 12/23/2020 | rent | Rent for 9 days | 290.03 | | 1,289.03 | 2484010 |
| 12/23/2020 | | chk# 40191881859572 :CHECKscan Payment | | 250.00 | 1,039.03 | 2475333 |
| 12/23/2020 | | chk# 40192070933057 :CHECKscan Payment | | 749.00 | 290.03 | 2475334 |
| 12/28/2020 | | chk# 40192070933066 :CHECKscan Payment | | 290.03 | 0.00 | 2475341 |
| 01/01/2021 | rent | Rent (01/2021) | 999.00 | | 999.00 | 2485429 |
| 01/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,048.95 | 2485937 |
| 01/13/2021 | | chk# 2094 57203153 :CHECKscan Payment | | 1,000.00 | 48.95 | 2477032 |
| 01/13/2021 | | chk# 2094 57203164 :CHECKscan Payment | | 48.95 | 0.00 | 2477033 |
| 02/01/2021 | rent | Rent (02/2021) | 999.00 | | 999.00 | 2487491 |
| 02/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,048.95 | 2488416 |
| 02/12/2021 | | chk# 2094 57237902 :CHECKscan Payment | | 1,000.00 | 48.95 | 2478875 |
| 02/12/2021 | | chk# 2094 57237913 :CHECKscan Payment | | 50.00 | (1.05) | 2478876 |
| 03/01/2021 | rent | Rent (03/2021) | 999.00 | | 997.95 | 2489884 |
| 03/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,047.90 | 2490709 |
| 03/15/2021 | | chk# 2094 57232215 :CHECKscan Payment | | 1,000.00 | 47.90 | 2481109 |
| 03/15/2021 | | chk# 2094 57232226 :CHECKscan Payment | | 50.00 | (2.10) | 2481110 |
| 04/01/2021 | rent | Rent (04/2021) | 999.00 | | 996.90 | 2492267 |
| 04/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,046.85 | 2492784 |
| 04/16/2021 | | chk# 5302298270 :CHECKscan Payment | | 1,050.00 | (3.15) | 2483278 |
| 05/01/2021 | rent | Rent (05/2021) | 999.00 | | 995.85 | 2494205 |
| 05/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,045.80 | 2494610 |
| 05/17/2021 | | chk# 5302366599 :CHECKscan Payment | | 1,050.00 | (4.20) | 2485390 |
| 06/01/2021 | rent | Rent (06/2021) | 999.00 | | 994.80 | 2496527 |
| 06/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,044.75 | 2497004 |
| 06/21/2021 | | chk# 2100 28904932 :CHECKscan Payment | | 1,000.00 | 44.75 | 2487521 |
| 06/21/2021 | | chk# 2100 28904943 :CHECKscan Payment | | 50.00 | (5.25) | 2487522 |
| 07/01/2021 | rent | Rent (07/2021) | 999.00 | | 993.75 | 2498586 |

| Date | | Description | Charge | Payment | Balance | Ref# |
|---|---|---|---|---|---|---|
| 07/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,043.70 | 2498983 |
| 07/16/2021 | | chk# 2100 11556250 :CHECKscan Payment | | 1,000.00 | 43.70 | 2489174 |
| 07/16/2021 | | chk# 2100 11556260 :CHECKscan Payment | | 50.00 | (6.30) | 2489175 |
| 08/01/2021 | rent | Rent (08/2021) | 999.00 | | 992.70 | 2500190 |
| 08/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,042.65 | 2500704 |
| 08/23/2021 | | chk# 2100 11550639 :CHECKscan Payment | | 50.00 | 992.65 | 2491428 |
| 08/23/2021 | | chk# 2100 11550628 :CHECKscan Payment | | 1,000.00 | (7.35) | 2491429 |
| 09/01/2021 | rent | Rent (09/2021) | 999.00 | | 991.65 | 2501989 |
| 09/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,041.60 | 2502435 |
| 09/20/2021 | | chk# 2100 11500116 :CHECKscan Payment | | 1,000.00 | 41.60 | 2493010 |
| 09/20/2021 | | chk# 2100 11500127 :CHECKscan Payment | | 50.00 | (8.40) | 2493011 |
| 10/01/2021 | rent | Rent (10/2021) | 999.00 | | 990.60 | 2504361 |
| 10/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,040.55 | 2504921 |
| 10/21/2021 | | chk# 2100 11504769 :CHECKscan Payment | | 1,000.00 | 40.55 | 2494708 |
| 10/21/2021 | | chk# 2100 11504770 :CHECKscan Payment | | 50.00 | (9.45) | 2494709 |
| 11/01/2021 | rent | Rent (11/2021) | 999.00 | | 989.55 | 2505830 |
| 11/06/2021 | late | Late Charge, 5% of $999.00 | 49.95 | | 1,039.50 | 2506409 |
| 11/22/2021 | | chk# 2100 11518959 :CHECKscan Payment | | 1,000.00 | 39.50 | 2496591 |
| 11/22/2021 | | chk# 2100 11518960 :CHECKscan Payment | | 39.50 | 0.00 | 2496592 |
| 12/01/2021 | rent | Rent (12/2021) | 1,049.00 | | 1,049.00 | 2507801 |
| 12/03/2021 | | chk# 2100 11511545 :CHECKscan Payment | | 902.00 | 147.00 | 2497622 |
| 12/04/2021 | | chk# 40191840771215 :CHECKscan Payment | | 147.00 | 0.00 | 2497752 |
| 01/01/2022 | rent | Rent (01/2022) | 1,049.00 | | 1,049.00 | 2509913 |
| 01/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2510677 |
| 01/26/2022 | | chk# 40193466619505 :CHECKscan Payment | | 1,000.00 | 101.45 | 2500792 |
| 01/26/2022 | | chk# 40193466619514 :CHECKscan Payment | | 101.45 | 0.00 | 2500793 |
| 02/01/2022 | rent | Rent (02/2022) | 1,049.00 | | 1,049.00 | 2512071 |
| 02/05/2022 | | chk# 40193536298441 :CHECKscan Payment | | 1,000.00 | 49.00 | 2502301 |
| 02/05/2022 | | chk# 40193536298450 :CHECKscan Payment | | 49.00 | 0.00 | 2502302 |
| 03/01/2022 | rent | Rent (03/2022) | 1,049.00 | | 1,049.00 | 2513678 |
| 03/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2514278 |
| 03/29/2022 | | chk# 2100 11536240 :CHECKscan Payment | | 1,000.00 | 101.45 | 2504769 |
| 03/29/2022 | | chk# 2100 11536251 :CHECKscan Payment | | 101.45 | 0.00 | 2504770 |
| 04/01/2022 | rent | Rent (04/2022) | 1,049.00 | | 1,049.00 | 2515234 |
| 04/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2515731 |
| 04/25/2022 | | chk# 2100 11539970 :CHECKscan Payment | | 1,000.00 | 101.45 | 2506653 |
| 04/25/2022 | | chk# 2100 11539980 :CHECKscan Payment | | 101.45 | 0.00 | 2506654 |
| 05/01/2022 | rent | Rent (05/2022) | 1,049.00 | | 1,049.00 | 2516955 |
| 05/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2517570 |
| 05/27/2022 | | chk# 40220023455170 :CHECKscan Payment | | 1,000.00 | 101.45 | 2508474 |
| 05/27/2022 | | chk# 40220023455188 :CHECKscan Payment | | 101.45 | 0.00 | 2508475 |
| 06/01/2022 | rent | Rent (06/2022) | 1,049.00 | | 1,049.00 | 2518593 |
| 06/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2519032 |
| 07/01/2022 | rent | Rent (07/2022) | 1,049.00 | | 2,150.45 | 2520103 |
| 07/01/2022 | | chk# 40220023444082 :CHECKscan Payment | | 101.45 | 2,049.00 | 2510586 |
| 07/01/2022 | | chk# 40220023444073 :CHECKscan Payment | | 1,000.00 | 1,049.00 | 2510587 |

| Date | Type | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 07/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2520527 |
| 07/27/2022 | | chk# 40220023448816 :CHECKscan Payment | | 1,000.00 | 101.45 | 2511757 |
| 07/27/2022 | | chk# 40220023448825 :CHECKscan Payment | | 101.45 | 0.00 | 2511758 |
| 08/01/2022 | rent | Rent (08/2022) | 1,049.00 | | 1,049.00 | 2521532 |
| 08/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2522014 |
| 08/31/2022 | | chk# 40194130268255 :CHECKscan Payment | | 1,000.00 | 101.45 | 2513257 |
| 08/31/2022 | | chk# 40194130268264 :CHECKscan Payment | | 101.45 | 0.00 | 2513258 |
| 09/01/2022 | rent | Rent (09/2022) | 1,049.00 | | 1,049.00 | 2522956 |
| 09/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,101.45 | 2523435 |
| 09/28/2022 | | chk# 40194328769861 :CHECKscan Payment | | 500.00 | 601.45 | 2514818 |
| 09/28/2022 | | chk# 40194328769870 :CHECKscan Payment | | 311.00 | 290.45 | 2514819 |
| 09/28/2022 | | chk# 40194328769852 :CHECKscan Payment | | 63.00 | 227.45 | 2514820 |
| 09/28/2022 | | chk# 40194328769888 :CHECKscan Payment | | 229.00 | (1.55) | 2514821 |
| 10/01/2022 | rent | Rent (10/2022) | 1,049.00 | | 1,047.45 | 2524486 |
| 10/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,099.90 | 2524976 |
| 10/31/2022 | | chk# 40220114823215 :CHECKscan Payment | | 1,000.00 | 99.90 | 2516294 |
| 10/31/2022 | | chk# 40220114823224 :CHECKscan Payment | | 101.45 | (1.55) | 2516295 |
| 11/01/2022 | rent | Rent (11/2022) | 1,049.00 | | 1,047.45 | 2525850 |
| 11/06/2022 | late | Late Charge, 5% of $1049.00 | 52.45 | | 1,099.90 | 2526325 |
| 11/30/2022 | | chk# 40220114824430 :CHECKscan Payment | | 1,000.00 | 99.90 | 2517556 |
| 11/30/2022 | | chk# 40220114824448 :CHECKscan Payment | | 99.90 | 0.00 | 2517558 |
| 12/01/2022 | rent | Rent (12/2022) | 1,099.00 | | 1,099.00 | 2527173 |
| 12/06/2022 | late | Late Charge (12/2022), 5% of $1099.00 | 54.95 | | 1,153.95 | 2527775 |
| 01/01/2023 | rent | Rent (01/2023) | 1,099.00 | | 2,252.95 | 2528632 |
| 01/03/2023 | | chk# 40220183248613 :CHECKscan Payment | | 153.95 | 2,099.00 | 2519293 |
| 01/03/2023 | | chk# 40220183248604 :CHECKscan Payment | | 1,000.00 | 1,099.00 | 2519297 |
| 01/06/2023 | late | Late Charge (01/2023), 5% of $1099.00 | 54.95 | | 1,153.95 | 2529121 |
| 01/30/2023 | | chk# 40220183251880 :CHECKscan Payment | | 1,000.00 | 153.95 | 2520170 |
| 01/30/2023 | | chk# 40220183251898 :CHECKscan Payment | | 153.95 | 0.00 | 2520171 |
| 02/01/2023 | rent | Rent (02/2023) | 1,099.00 | | 1,099.00 | 2530033 |
| 02/06/2023 | late | Late Charge (02/2023), 5% of $1099.00 | 54.95 | | 1,153.95 | 2530429 |
| 02/15/2023 | court | eviction filed | 300.00 | | 1,453.95 | 2530791 |
| 02/23/2023 | | chk# 40220198920160 :CHECKscan Payment | | 1,000.00 | 453.95 | 2521631 |
| 02/23/2023 | | chk# 40220198920178 :CHECKscan Payment | | 453.95 | 0.00 | 2521632 |
| 03/01/2023 | rent | Rent (03/2023) | 1,099.00 | | 1,099.00 | 2531308 |
| 03/04/2023 | | chk# 40195145895116 :CHECKscan Payment | | 500.00 | 599.00 | 2522273 |
| 03/04/2023 | | chk# 40195145895107 :CHECKscan Payment | | 500.00 | 99.00 | 2522274 |
| 03/04/2023 | | chk# 40195145895125 :CHECKscan Payment | | 99.00 | 0.00 | 2522275 |
| 04/01/2023 | rent | Rent (04/2023) | 1,099.00 | | 1,099.00 | 2532642 |
| 04/05/2023 | | chk# 40193237552306 :CHECKscan Payment | | 500.00 | 599.00 | 2523959 |
| 04/05/2023 | | chk# 40193237552315 :CHECKscan Payment | | 500.00 | 99.00 | 2523960 |
| 04/05/2023 | | chk# 40193237552324 :CHECKscan Payment | | 99.99 | (0.99) | 2523961 |
| 05/01/2023 | rent | Rent (05/2023) | 1,099.00 | | 1,098.01 | 2533758 |
| 05/06/2023 | late | Late Charge (05/2023), 5% of $1099.00 | 54.95 | | 1,152.96 | 2534200 |
| 05/15/2023 | | chk# 40195297979006 :CHECKscan Payment | | 500.00 | 652.96 | 2525626 |
| 05/15/2023 | | chk# 40195297979015 :CHECKscan Payment | | 500.00 | 152.96 | 2525627 |

| Date | Type | Description | Charge | Payment | Balance | Ref# |
|---|---|---|---|---|---|---|
| 05/15/2023 | | chk# 40195297972024 :CHECKscan Payment | | 152.96 | 0.00 | 2525628 |
| 06/01/2023 | rent | Rent (06/2023) | 1,099.00 | | 1,099.00 | 2534978 |
| 06/06/2023 | late | Late Charge (06/2023), 5% of $1099.00 | 54.95 | | 1,153.95 | 2535429 |
| 06/15/2023 | | chk# 40195401463301 :CHECKscan Payment | | 500.00 | 653.95 | 2526931 |
| 06/15/2023 | | chk# 40195401463310 :CHECKscan Payment | | 500.00 | 153.95 | 2526932 |
| 06/15/2023 | | chk# 40195401463328 :CHECKscan Payment | | 153.95 | 0.00 | 2526933 |
| 07/01/2023 | rent | Rent (07/2023) | 1,099.00 | | 1,099.00 | 2536250 |
| 07/05/2023 | | chk# 40195297980797 :CHECKscan Payment | | 500.00 | 599.00 | 2528005 |
| 07/05/2023 | | chk# 40195297980815 :CHECKscan Payment | | 99.00 | 500.00 | 2528009 |
| 07/05/2023 | | chk# 40195297980806 :CHECKscan Payment | | 500.00 | 0.00 | 2528010 |
| 08/01/2023 | rent | Rent (08/2023) | 1,099.00 | | 1,099.00 | 2537572 |
| 08/06/2023 | late | Late Charge (08/2023), 5% of $1099.00 | 54.95 | | 1,153.95 | 2537983 |
| 08/16/2023 | | chk# 40194958073063 :CHECKscan Payment | | 500.00 | 653.95 | 2529587 |
| 08/16/2023 | | chk# 40194958073054 :CHECKscan Payment | | 500.00 | 153.95 | 2529588 |
| 08/16/2023 | | chk# 40194958073072 :CHECKscan Payment | | 153.95 | 0.00 | 2529589 |
| 09/01/2023 | rent | Rent (09/2023) | 1,099.00 | | 1,099.00 | 2538822 |
| 09/06/2023 | late | Late Charge (09/2023), 5% of $1099.00 | 54.95 | | 1,153.95 | 2539245 |
| 09/14/2023 | | chk# 40194958069931 :CHECKscan Payment | | 500.00 | 653.95 | 2531104 |
| 09/14/2023 | | chk# 40194958069940 :CHECKscan Payment | | 500.00 | 153.95 | 2531105 |
| 09/14/2023 | | chk# 40194958069958 :CHECKscan Payment | | 154.00 | (0.05) | 2531106 |
| 10/01/2023 | rent | Rent (10/2023) | 1,099.00 | | 1,098.95 | 2540037 |
| 10/06/2023 | late | Late Charge (10/2023), 5% of $1099.00 | 54.95 | | 1,153.90 | 2540428 |
| 10/15/2023 | | chk# 40195861340468 :CHECKscan Payment | | 500.00 | 653.90 | 2532746 |
| 10/15/2023 | | chk# 40195861340477 :CHECKscan Payment | | 500.00 | 153.90 | 2532747 |
| 10/15/2023 | | chk# 40195861340486 :CHECKscan Payment | | 154.00 | (0.10) | 2532748 |
| 11/01/2023 | rent | Rent (11/2023) | 1,099.00 | | 1,098.90 | 2541391 |
| 11/06/2023 | late | Late Charge (11/2023), 5% of $1099.00 | 54.95 | | 1,153.85 | 2541888 |
| 11/15/2023 | | chk# 40196012144063 :CHECKscan Payment | | 500.00 | 653.85 | 2534106 |
| 11/15/2023 | | chk# 40196012144072 :CHECKscan Payment | | 500.00 | 153.85 | 2534107 |
| 11/15/2023 | | chk# 40196012144081 :CHECKscan Payment | | 153.85 | 0.00 | 2534108 |
| 12/01/2023 | rent | Rent (12/2023) | 1,099.00 | | 1,099.00 | 2542705 |
| 12/01/2023 | rent | Rent Increase, Tenant rent is $1,200 a/month effective 12/1/2023 | 101.00 | | 1,200.00 | 2544372 |
| 12/06/2023 | late | Late Charge (12/2023), 5% of $1099.00 | 54.95 | | 1,254.95 | 2543189 |
| 12/15/2023 | | chk# 40220240855120 :CHECKscan Payment | | 1,000.00 | 254.95 | 2535422 |
| 12/15/2023 | | chk# 40220240855138 :CHECKscan Payment | | 153.95 | 101.00 | 2535423 |
| 01/01/2024 | rent | Rent (01/2024) | 1,200.00 | | 1,301.00 | 2544012 |
| 01/06/2024 | late | Late Charge (01/2024), 5% of $1200.00 | 60.00 | | 1,361.00 | 2544474 |
| 01/16/2024 | | chk# 40196126973641 :CHECKscan Payment | | 500.00 | 861.00 | 2536890 |
| 01/16/2024 | | chk# 40196126973632 :CHECKscan Payment | | 500.00 | 361.00 | 2536891 |
| 01/16/2024 | | chk# 40196126973650 :CHECKscan Payment | | 260.00 | 101.00 | 2536892 |
| 02/01/2024 | rent | Rent (02/2024) | 1,200.00 | | 1,301.00 | 2545548 |
| 02/06/2024 | late | Late Charge (02/2024), 5% of $1200.00 | 60.00 | | 1,361.00 | 2545969 |
| 02/14/2024 | | chk# 40196130621584 :CHECKscan Payment | | 500.00 | 861.00 | 2538373 |
| 02/14/2024 | | chk# 40196130621575 :CHECKscan Payment | | 500.00 | 361.00 | 2538374 |
| 02/14/2024 | | chk# 40196130621593 :CHECKscan Payment | | 361.00 | 0.00 | 2538375 |
| 03/01/2024 | rent | Rent (03/2024) | 1,200.00 | | 1,200.00 | 2546753 |

| 03/06/2024 | late | Late Charge (03/2024), 5% of $1200.00 | 60.00 | | 1,260.00 | 2547135 |
| 03/14/2024 | | chk# 40196250906710 :CHECKscan Payment | | 500.00 | 760.00 | 2539859 |
| 03/14/2024 | | chk# 40196250906737 :CHECKscan Payment | | 260.00 | 500.00 | 2539860 |
| 03/14/2024 | | chk# 40196250906728 :CHECKscan Payment | | 500.00 | 0.00 | 2539861 |
| 04/01/2024 | rent | Rent (04/2024) | 1,200.00 | | 1,200.00 | 2547979 |
| 04/06/2024 | late | Late Charge (04/2024), 5% of $1200.00 | 60.00 | | 1,260.00 | 2548393 |
| 04/16/2024 | | chk# 40196381610560 :CHECKscan Payment | | 500.00 | 760.00 | 2541100 |
| 04/16/2024 | | chk# 40196381610578 :CHECKscan Payment | | 500.00 | 260.00 | 2541101 |
| 04/16/2024 | | chk# 40196381610587 :CHECKscan Payment | | 260.00 | 0.00 | 2541102 |
| 05/01/2024 | rent | Rent (05/2024) | 1,200.00 | | 1,200.00 | 2549199 |
| 05/06/2024 | late | Late Charge (05/2024), 5% of $1200.00 | 60.00 | | 1,260.00 | 2549656 |
| 05/16/2024 | | chk# 40196432209847 :CHECKscan Payment | | 500.00 | 760.00 | 2542465 |
| 05/16/2024 | | chk# 40196432209856 :CHECKscan Payment | | 260.00 | 500.00 | 2542466 |
| 05/16/2024 | | chk# 40196432209838 :CHECKscan Payment | | 500.00 | 0.00 | 2542467 |
| 06/01/2024 | rent | Rent (06/2024) | 1,200.00 | | 1,200.00 | 2550527 |
| 06/06/2024 | late | Late Charge (06/2024), 5% of $1200.00 | 60.00 | | 1,260.00 | 2550971 |
| 06/16/2024 | | chk# 40220637791714 :CHECKscan Payment | | 1,000.00 | 260.00 | 2543949 |
| 06/16/2024 | | chk# 40220637791723 :CHECKscan Payment | | 260.00 | 0.00 | 2543950 |
| 07/01/2024 | rent | Rent (07/2024) | 1,200.00 | | 1,200.00 | 2551814 |
| 07/06/2024 | late | Late Charge (07/2024), 5% of $1200.00 | 60.00 | | 1,260.00 | 2552359 |
| 07/16/2024 | court | EVICTION FILED | 300.00 | | 1,560.00 | 2552646 |
| 08/01/2024 | rent | Rent (08/2024) | 1,200.00 | | 2,760.00 | 2553133 |
| 09/01/2024 | rent | Rent (09/2024) | 1,200.00 | | 3,960.00 | 2554542 |
| 09/06/2024 | late | Late Charge (09/2024), 5% of $1200.00 | 60.00 | | 4,020.00 | 2555098 |
| 10/01/2024 | rent | Rent (10/2024) | 1,200.00 | | 5,220.00 | 2555925 |